**FILED**

DEC 1 7 2001

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

DEPUTY CLERK

**LODGED**

DEC 1 3 2001

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Plaintiff,

        v.

WAL-MART STORES, INC.,

        Defendant.

        )
        )

Civil Action No. S99-0414 GEB DAD

**CONSENT DECREE**

Before: Honorable Garland E. Burrell, Jr.

Hearing: December 17, 2001 at 9:00 a.m.

98

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FINDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      NON-DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     NON-RETALIATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    MONETARY RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.    Total Settlement Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        B.    Monetary Relief for Steve Sanders, Carl Burch and John Bendall . . . . . . 4
        C.    Job Offer for Steve Sanders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        D.    $3,000,000 Settlement Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        E.    Claims Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        F.    Criteria for Determining Potential Eligible Claimants . . . . . . . . . . . . . . . 7

IV      NOTIFICATION OF SETTLEMENT / CLAIMS PROCESS . . . . . . . . . . . . . . . 7

        A.    Hiring Location Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        B.    Website Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        C.    Print Media Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.      CLAIMS PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.    Determination and Notification of Eligibility . . . . . . . . . . . . . . . . . . . . . . 9
        B.    Objection Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        C.    Court Approval of Monetary Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        D.    Submission of Final Distribution List . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        E.    Notification and Distribution of Final Settlement Amounts . . . . . . . . . . . 12
        F.    Payment Reconciliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        G.    Surplus Funds to Non-profit Organizations . . . . . . . . . . . . . . . . . . . . . . . 12
        H.    Wal-Mart to Pay Fund Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        I.    Job Offers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI.     APPOINTMENT OF SPECIAL MASTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VII.    ADA COORDINATOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VIII.   ABOLITION OF THE MATRIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IX.     ADA POLICIES AND PROCEDURES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

X.      STAFF TRAINING AND DEVELOPMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XI.     RECORD KEEPING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XII.    POSTING OF NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XIII.   AUDITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XIV.   PERFORMANCE EVALUATIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

XV.    COMPLIANCE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

XVI.   DURATION OF CONSENT DECREE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

<u>ATTACHED EXHIBITS</u>

Exhibit A      List of Pending Cases  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 4

Exhibit B      Wal-Mart Distribution Centers, 1994-1998 . . . . . . . . . . . . . . . . . . . . . .  7, 13

Exhibit C      Claim Form  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 9

Exhibit D      Job Application  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 9

Exhibit E      Notice for Media and Centers  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

Exhibit F      List Of Top Fifty Metro Newspapers  . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Exhibit G      Notice II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

ii

**INTRODUCTION**

The United States Equal Employment Opportunity Commission (the "Commission" or "EEOC") filed this action against the Defendant, Wal-Mart Stores, Inc. ("Wal-Mart") to enforce Title I of the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("the ADA") and Title I of the Civil Rights Act of 1991, 42 U.S.C.        §1981a. The Commission's Complaint alleges that Wal-Mart discriminated against Steve Sanders by failing to accommodate his disability, and by terminating him because of his disability. The EEOC also alleged that Wal-Mart made illegal preemployment medical inquiries to a class of victims.  The Commission's Complaint seeks to recover back pay, front pay, compensatory damages, punitive damages, and injunctive relief.

As a result of the parties having engaged in settlement negotiations, the parties agreed that this action should be finally resolved by entry of this Consent Decree.  This Consent Decree was entered into by the parties as an amicable way of resolving all outstanding differences that may have existed in this case.  This Consent Decree is intended and does fully and finally resolve any and all claims arising out of the Complaint filed by the EEOC.

The parties do not object to the jurisdiction of the Court over this action and waive the Entry of Findings of Fact and Conclusions of Law.

**FINDINGS**

It is **ORDERED, ADJUDGED AND DECREED:**

Having examined the terms and provisions of this Consent Decree and based on the pleadings, record, and stipulations of the parties, the Court finds the following:

1.     This Consent Decree resolves all claims arising out of the issues between the Commission and Wal-Mart in this lawsuit, including, without limitation, back pay, front pay, compensatory and punitive damages, injunctive relief, costs, and attorneys' fees.

1

2.     The Court has jurisdiction of the subject matter of this action and of the parties.

3.     The terms and provisions of this Consent Decree are adequate, fair, reasonable, equitable, and just.  The rights of the parties are adequately protected by this Consent Decree.

4.     This Consent Decree conforms with the Federal Rules of Civil Procedure and the ADA and is not in derogation of the rights and privileges of any person.  The entry of this Consent Decree will further the objectives of the ADA and will be in the best interests of Wal-Mart, the Commission, and the public.

## I.  NON-DISCRIMINATION

5.     In all matters arising from or relating to employment, Wal-Mart and its officers, agents, employees, successors, and assigns, and all of those in active concert or participation with them, or any of them, shall not engage in any employment practice which unlawfully discriminates against an employee or applicant under the Americans with Disabilities Act.  Prohibited discrimination includes, but is not limited to:

      a.    refusing to hire or rehire a qualified individual with a disability because of his/her disability;

      b.    refusing to provide a reasonable accommodation to a qualified individual with a disability;

      c.    discharging a qualified individual with a disability because of his/her disability;

      d.    maintaining any practice or policy that violates the ADA by depriving or tending to deprive any individual of employment opportunities because of such individual's disability;

      e.    discriminating against persons on the basis of their disabilities in the terms and conditions of their employment; and,

      f.    making disability related pre-employment inquiries.

2

## II.  NON-RETALIATION

6.     Wal-Mart, its officers, agents, employees, successors, assigns, and all those in active concert or participation with them, or any of them, shall not engage in reprisal or retaliation of any kind against any person because such person:

    a.  opposed any practice made unlawful under the ADA;

    b.  filed a charge of discrimination with the Commission or a state agency or testified or participated in any manner in any investigation, proceeding, or hearing under the ADA;

    c.  requested and/or received relief in accordance with this Consent Decree;

    d.  participated in any manner in this action or in the investigation giving rise to this action; or

    e.  asserted any rights under this Consent Decree.

## III.  MONETARY RELIEF

### A.     Total Settlement Amount

7.     In resolution of this and other related pending litigation, Wal-Mart has agreed to pay a total of SIX MILLION EIGHT HUNDRED THOUSAND DOLLARS ($6,800,000.00).  By agreement and consistent with the terms of this Consent Decree, judgment is hereby entered in this litigation against Wal-Mart in the amount of THREE MILLION FIVE HUNDRED SIXTY TWO THOUSAND FOUR HUNDRED NINETY ONE DOLLARS AND NINETY FOUR CENTS ($3,562,491.94).  In the twelve (12) related actions, which comprise all other pending EEOC cases in litigation against Wal-Mart under the ADA, (itemized on Exhibit A hereto) pending in United States District Courts throughout the United States, Wal-Mart has agreed to cumulative additional payments totaling THREE MILLION TWO HUNDRED THIRTY SEVEN THOUSAND FIVE HUNDRED EIGHT DOLLARS AND TEN CENTS ($3,237,508.10).

3

8.      Within fourteen days of the entry of this Consent Decree, the Commission and Wal-Mart have agreed to file appropriate consent decrees in each of the cases listed on Exhibit A.  The Commission and Wal-Mart have agreed and understand that each Court outlined in Exhibit A is where jurisdiction is and remains for all purposes for those cases.  It is understood and agreed that those consent decrees will require offers of employment to affected individuals (including charging parties and class members), in the cases listed in Exhibit A.

   **B.      <u>Monetary Relief for Steve Sanders, Carl Burch, and John Bendall</u>**

9.      Within fifteen (15) days after this Consent Decree is approved by the Court, Wal-Mart shall make payment in the form of a business check made payable to Steve Sanders, and will send a copy of the check to Lynn L. Palma, Senior Trial Attorney, EEOC, 901 Market, Suite 500, San Francisco, CA 94103, made payable to him in the gross amount of $202,879.74, including:

      a.      $43,026.95 for back pay, less only any applicable deductions for the employee's portion of FICA and applicable federal and state income tax withholdings;

      b.      $284.95 for interest on the back pay; and,

      c.      $159,567.84 for compensatory damages.

10.     Within fifteen (15) days after this Consent Decree is approved by the Court, Wal-Mart shall make payment in the form of a business check made payable to Carl Burch, and will send a copy of the check to Lynn L. Palma, Senior Trial Attorney, EEOC, 901 Market, Suite 500, San Francisco, CA 94103, made payable to Carl Burch in the gross amount of $171,838.57, including:

      a.      $9,315.47 for back pay, less only any applicable deductions for the employee's portion of FICA and applicable federal and state income tax withholdings;

      b.      $54.03 for interest on the back pay; and,

4

1      c.   $162,469.07 for compensatory damages.

2    11.   Within fifteen (15) days after this Consent Decree is approved by the Court,

3 Wal-Mart shall make payment in the form of a business check made payable to John

4 Bendall, and will send a copy of the check to Lynn L. Palma, Senior Trial Attorney,

5 EEOC, 901 Market, Suite 500, San Francisco, CA 94103, made payable to John Bendall

6 in the gross amount of $187,773.63, including:

7      a.   $36,696.07 for back pay, less only any applicable deductions for the

8         employee's portion of FICA and applicable federal and state income

9         tax withholdings;

10      b.   $212.82 for interest on the back pay; and,

11      c.   $150,864.14 for compensatory damages.

12    12.   Wal-Mart will forward to Steve Sanders, Carl Burch, and John Bendall,

13 with the checks described above, an itemized statement of withholdings for each amount

14 withheld, including the employee share of FICA and the applicable federal and state

15 income withholdings from each amount allocated as back pay. Wal-Mart will issue a

16 Form 1099 for all other payments.

17    **C.**   **Job Offer for Steve Sanders**

18    13.   Within thirty (30) days after this Consent Decree is approved by the Court,

19 Wal-Mart will offer Steve Sanders full or part-time employment, at his option, with any

20 necessary reasonable accommodation, for which he is qualified, at the average rate he

21 would have earned had he not been terminated on February 3, 1996. Mr. Sanders shall

22 have thirty (30) days from the date of the job offer to accept the job offer. Wal-Mart

23 agrees to provide all necessary reasonable accommodations to Steve Sanders. Wal-Mart

24 agrees to assign work schedules, vacation days, sick days, and other benefits of

25 employment to Mr. Sanders that would have been his to enjoy had Wal-Mart continuously

26 employed him since February 3, 1996. After completion of the 90-day probationary

27 period, Steve Sanders will be awarded the effective corporate service date of February 3,

28

1    1996 and this date will be the basis for determining his entitlement to wages and benefits,
2    consistent with all applicable Wal-Mart policies and procedures for hourly employees.
3    Wal-Mart will enroll Steve Sanders in any and all benefits, including but not limited to,
4    health and dental benefits, effective the first day of employment.

5    **D.    $3,000,000 Settlement Fund**

6    14.    Within seven (7) days of the Court's approval of the final allocation of the
7    Settlement Fund as described below, Wal-Mart shall pay the gross sum of THREE
8    MILLION DOLLARS ($3,000,000.00) ("Settlement Fund") to the Claims Administrator,
9    whose position is described in paragraph 17, to be distributed among all "Eligible
10   Claimants" (as that term is defined below), all in accordance with the provisions of this
11   Consent Decree.

12   15.    The Settlement Fund shall be used solely to make payments to individuals
13   who timely submit Claim Forms ("Claimants") and whom the Claims Administrator and
14   the EEOC determine, subject to Court approval, to be eligible to receive monetary relief
15   in this lawsuit ("Eligible Claimants").

16   16.    No persons or entities other than Eligible Claimants shall receive any
17   payments from the Settlement Fund, except for the non-profit organizations identified in
18   paragraph 36 below.

19   **E.    Claims Administrator**

20   17.    Within seven (7) days from the date of entry of this Consent Decree, Wal-
21   Mart shall hire a Claims Administrator, with the approval of the EEOC.  Wal-Mart shall
22   be solely responsible for all costs and fees of the Claims Administrator and the work that
23   it does or contracts to be done.  The Claims Administrator shall be responsible for:

24            a.    the distribution of Claims Forms and Job Applications;
25            b.    the initial determination of potential Eligible Claimants under this
26                  Consent Decree;
27            c.    the distribution of the Settlement Fund; and,
28

6

        d.     the distribution of any remaining money to the non-profit organizations identified in paragraph 36 below.

18.    Wal-Mart agrees that the EEOC shall be the sole determiner of who is an Eligible Claimant under this Consent Decree and the amount of monetary relief to be received by any Eligible Claimant subject only to the approval of the Court as described in paragraphs 31 and 32 below.

**F.**    **Criteria For Determining Potential Eligible Claimants**

19.    Only those Claimants who satisfy **each and all** of the following criteria are potential Eligible Claimants:

    a.    between January 1, 1994, and December 31, 1998, the Claimant applied for a job at a Wal-Mart Distribution Center, listed in Exhibit B, ("the Applicable Facility");

    b.    the Claimant was not hired by Wal-Mart;

    c.    the Claimant met all the non-discriminatory job qualifications at the time of application; and,

    d.    the Claims Administrator timely receives from such Claimant, in accordance with the procedures set forth in this Consent Decree, a completed Claim Form, attached to this Consent Decree as Exhibit C, and a completed Application for Employment, attached to this Consent Decree as Exhibit D.

**IV.  NOTIFICATION OF SETTLEMENT / CLAIMS PROCESS**

**A.**    **Hiring Location Notice**

20.    On or before the Monday immediately following the entry of this Consent Decree and until March 1, 2002, (the "Notification Period"), Wal-Mart agrees to prepare and post the notice attached as Exhibit E ("Notice") in all the Distribution Centers listed in Exhibit B.

7

1        a.     The Notice posted will be produced on 8" by 11" glossy stock paper.

2        b.     The Notice will be displayed in two places at each Applicable

3              Facility:

4             (1)    in the employee area where labor and employment notices are

5                    posted; and,

6             (2)    in the area where job applications are distributed.

7        c.     Wal-Mart's Personnel Manager at each of the Applicable Facilities,

8              or his/her immediate assistant, will maintain a monthly sheet

9              verifying that the two posters continue to be displayed in the proper

10            locations. This Monthly Verification Sheet will be signed by the

11            Personnel Manager or his/her immediate assistant and sent to the

12            ADA Coordinator the last Friday of each month during the

13            Notification Period.

14    **B.**    **Website Notice**

15    21.    As a further means of notifying potential Eligible Claimants of the

16 settlement of this lawsuit and of the claims process described in this Consent Decree,

17 Wal-Mart agrees to publish the notice attached as Exhibit E on the website established for

18 purposes of claims in this lawsuit (the "claims website") during the Notification Period.

19    **C.**    **Print Media Notice**

20    22.    As a further means of notifying potential Eligible Claimants of the

21 settlement of this lawsuit and of the claims process described in this Consent Decree,

22 Wal-Mart will publish the Notice in certain print media as follows:

23        a.     two insertions each in the Top 50 major metropolitan newspapers,

24              enumerated in Exhibit F, published in a size not smaller than 6" wide

25              by 6.5" high, inserted in the general newspaper section and not the

26            classified section, on the dates of December 23, 2001, and December

27            30, 2001;

28

b.      insertions in PEOPLE Magazine, published in a size not smaller than half a page, dated December 21, 2001, and December 28, 2001;

c.      two insertions in Parade Magazine (published nationally), published in a size not smaller than 5 1/4" by 7" (peninsula layout) on the dates of January 20, 2002, and January 27, 2002; and,

d.      two insertions in USA Weekend, which is published nationally, published in a size not smaller than 4 3/4" by 5 3/8" on the dates of January 20, 2002, and January 27, 2002.

## V.  CLAIMS PROCESS

### A.      Determination and Notification of Eligibility

23.     The Claims Administrator shall mail a copy of the Claim Form, attached as Exhibit C, and an Application for Employment, attached as Exhibit D, to each individual who requests a Claim Form within three (3) working days of receiving the request.

24.     All Claim Forms must be postmarked by March 1, 2002, to be considered.

25.     Each Claim Form submitted to the Claims Administrator shall be reviewed by the Claims Administrator within seven (7) calendar days of the date of receipt of the Claim Form.

26.     Within seven (7) calendar days of the date of receipt of the Claim Form, the Claims Administrator will respond by:

(1)     where there is a non-substantive deficiency in the materials, sending a notice to the Claimant explaining the deficiency, and informing the claimant that the deficiency must be corrected within fourteen (14) calendar days; or,

(2)     sending a notice that:

(a)     the individual has been initially designated as a potential Eligible Claimant; and,

9

   (b) advising the individual that the EEOC will review the claim form and determine if the potential Eligible Claimant is an Eligible Claimant, and that the EEOC may conduct additional investigation in making that determination; or,

  (3) sending a notice that:

   (a) the individual has been found ineligible for relief under this Consent Decree for either:

     i) failing to have the claim postmarked by March 1, 2002, or,

     ii) failing to have applied during the relevant time period, or,

     iii) failing to meet Wal-Mart's non-discriminatory job qualifications at the time of application; and,

   (b) the individual will have an opportunity to object to the Claim Administrator's determination of eligibility in accordance with the provisions of this Consent Decree.

27. The Claims Administrator will send copies of the Claim Forms of the individuals initially determined to be potential Eligible Claimants to the EEOC at the same time that the notices are sent to the potential Eligible Claimants.

28. The EEOC will determine which of the potential Eligible Claimants were adversely affected by Wal-Mart's disability related pre-employment inquiries and are therefore Eligible Claimants entitled to relief under this Consent Decree.  In making this determination the EEOC, in its own discretion, may seek additional information.  The EEOC will notify all potential Eligible Claimants who it determines are not entitled to relief under this Consent Decree.

10

**B.**   **Objection Procedure**

29.   Any Claimant whose Claim Form is timely received by the Claims Administrator and who desires to object to the Claims Administrator's determination concerning potential eligibility may do so by mailing to the Special Master (as described below), within thirty (30) days after the date of mailing of the Claims Administrator's determination, a written objection. Any such written objection must state the basis for the objection and include supplementary explanation and/or documentation.

30.   The Special Master shall promptly consider each written objection he or she receives. Within twenty-one (21) days after receiving any objections made by a Claimant, or as soon thereafter as is practicable, the Special Master shall render a final determination as to whether the objecting Claimant is a potential Eligible Claimant. The Special Master shall, on the same day, notify in writing the Claims Administrator, the EEOC, and the objecting Claimant of that final determination. The determination shall be binding upon the EEOC, the Claims Administrator, and the objecting Claimant.

**C.**   **Court Approval of Monetary Relief**

31.   The EEOC shall make a determination as to the amount of monetary relief from the Settlement Fund that will be awarded to each Eligible Claimant. The EEOC will determine the amount to be paid to each Eligible Claimant after all of the Claim Forms have been processed. The EEOC will notify the Court and request approval of the Court for the final distribution. Wal-Mart agrees that it will neither participate in nor object to the EEOC's determinations.

**D.**   **Submission of Final Distribution List**

32.   Within thirty (30) days of the final determination by the EEOC, the EEOC shall file with the Court a motion for the Court's approval of the allocation of the Settlement Fund among Eligible Claimants as determined by the EEOC. In connection with this motion, the EEOC shall file a final settlement distribution list which shall contain the name, address, and final gross settlement amount for each Eligible Claimant.

1    **E.    Notification and Distribution of Final Settlement Amounts**

2    33.    Within fourteen (14) days after the Court enters an Order approving the

3    EEOC's proposed allocation of the Settlement Fund, Wal-Mart shall ensure that the

4    Claims Administrator shall forward payment to each eligible claimant by certified mail,

5    return receipt requested.  Return Receipt cards shall be maintained in a central location

6    and made available for review by the EEOC.  The Claims Administrator will mail copies

7    of the checks to the Commission's San Francisco, California, and Phoenix, Arizona,

8    Regional Attorneys at the same time it mails the checks to each Eligible Claimant.

9    **F.    Payment Reconciliation**

10   34.    Wal-Mart shall ensure that the Claims Administrator shall send to the

11   EEOC a listing of each payee's name and the check amount.  Wal-Mart shall ensure that

12   the Claims Administrator shall promptly notify the EEOC in writing of any checks that

13   are returned or any checks that are not cashed after a period of ninety (90) days has

14   elapsed from the date on which the settlement checks were mailed.

15   35.    As directed by the EEOC, the Claims Administrator shall take further steps

16   in a timely manner to reach those Eligible Claimants who did not receive and/or deposit

17   their settlement checks.

18   **G.    Surplus Funds to Non-Profit Organizations**

19   36.    In the event that any portion of the Settlement Fund, including accrued

20   interest, has not been distributed as required by this Consent Decree after a period of one

21   hundred twenty (120) days has elapsed from the date on which the settlement checks were

22   mailed by the Claims Administrator, then such remaining amounts from the Settlement

23   Fund shall be paid to one or more of the following non-profit disability rights

24   organizations:

25          a.    National Association of the Deaf;

26          b.    National Information Center on Deafness;

27          c.    American Diabetes Association;

28

12

1                d.     American Paralysis Association; and,

2                e.     American Association of People with Disabilities.

3   EEOC shall determine the amount to be given to each organization listed above, subject to

4   Court approval, and shall so notify Wal-Mart's counsel.

5          **H.**     **Wal-Mart to Pay Fund Costs**

6         37.     Wal-Mart agrees to pay all costs associated with the distribution of the

7   Settlement Fund to Eligible Claimants, including, without limitation, all costs associated

8   with the creation of the Settlement Fund, all costs related to the issuance and mailing of

9   checks from the Settlement Fund, and all costs relating to the Special Master.

10         38.     All amounts distributed from the Settlement Fund constitute "compensatory

11   damages," under the Civil Rights Act of 1991, 42 U.S.C. §1981a and no payment made to

12   Eligible Claimant  pursuant to this Consent Decree shall constitute or be considered back-

13   pay.

14         39.     Wal-Mart will issue a United States Internal Revenue Service Form 1099 to

15   each Eligible Claimant for all payments from the Settlement Fund.

16         **I.**     **Job Offers**

17         40.     Within fourteen (14) days of Court approval of the final Eligible Claimants

18   list, the EEOC shall forward to the ADA Coordinator (as described below) a list of all

19   Eligible Claimants and completed Job Application Forms.  Within thirty (30) days of

20   receipt of the completed Job Application Forms, the ADA Coordinator will determine

21   which Eligible Claimants are qualified for employment in accordance with Wal-Mart's

22   legitimate non-discriminatory criteria ("Qualified Applicants").

23         41.     Within sixty (60) days of the determination of Qualified Applicants, the

24   ADA Coordinator will:

25                a.     notify each Qualified Applicant of their potential eligibility for an

26                      offer of employment at an Applicable Facility listed in Exhibit B, and

27                      the method for obtaining an interview at the Applicable Facility,

28

13

1        arrange for such interviews at the Applicable Facility, and ascertain
2        the then-current job openings at the Applicable Facility; and,
3    b.    notify each Eligible Claimant who is not a Qualified Applicant of the
4        reason(s) for their rejection and of their ability to object to the ADA
5        Coordinator's determination concerning their status as a Qualified
6        Applicant by mailing to the ADA Coordinator, within fourteen (14)
7        days after the date of mailing of the ADA Coordinator's
8        determination, a written objection.  Any such written objection must
9        state the basis for the objection and submit supplementary
10        explanation and/or documentation.

11    42.    Within two (2) weeks after receipt of any such written objection, the ADA
12    Coordinator shall review the determination of whether the objecting Eligible Claimant
13    was a Qualified Applicant, either modify the determination, or deny the objection and
14    submit the objection to the Special Master, with a copy to the EEOC.

15    43.    The Special Master shall promptly consider each written objection he or she
16    receives.  Within twenty-one (21) days after receiving from the ADA Coordinator any
17    objections made by an Eligible Claimant, or as soon thereafter as is practicable, the
18    Special Master shall render a final determination as to whether the objecting Eligible
19    Claimant is a Qualified Applicant.  The Special Master shall, on the same day, notify in
20    writing the ADA Coordinator, the EEOC, and the Eligible Claimant of that final
21    determination.  The determination shall be binding upon the EEOC, the ADA
22    Coordinator, and the objecting Eligible Claimant.

23    44.    Qualified Applicants who have completed the interview process will be
24    given preference in job offers at the Applicable Facility in the following manner:

25    a.    The ADA Coordinator will maintain a roster of Qualified Applicants
26        for nine (9) months from the date the ADA Coordinator receives the
27        list of Eligible Claimants and Job Applications from the EEOC,
28        ("the Offer Period").

14

b.     The ADA Coordinator will ascertain job openings at each Applicable Facility every thirty (30) days during the Offer Period.

c.     The Qualified Applicant will be extended a job offer at the Applicable Facility in preference to similarly qualified applicants for open positions during the Offer Period.

d.     Within fourteen (14) days of the expiration of the Offer Period, the ADA Coordinator will notify each Qualified Applicant who has not received a job offer that their application for employment is no longer actively being considered.

## VI.  APPOINTMENT OF SPECIAL MASTER

45.     Within thirty (30) days of entry of this Consent Decree, Wal-Mart agrees to select, subject to approval of the EEOC, an independent consultant with expertise in EEO, the ADA, and personnel matters (the "Special Master")[1] to perform the duties described below, and to review and critique Wal-Mart's compliance and implementation of this Consent Decree. The EEOC shall notify Wal-Mart within fourteen (14) days whether or not it approves of Wal-Mart's choice. In the event that the EEOC and Wal-Mart are unable to agree on the selection of a Special Master, they may each submit the names and curriculum vitae of not more than two proposed consultants, and the Court will make the selection.

46.     Wal-Mart will compensate the Special Master at a negotiated rate and shall reimburse the Special Master's reasonable expenses.

47.     The Special Master will have the authority and the obligation, subject to the supervision of the Court:

a.     to review and critique Wal-Mart's implementation of this Consent Decree;

---

[1]   The term "Special Master" in this Consent Decree does not refer to the Special Master identified in Federal Rule of Civil Procedure 53.

b.     to make recommendations to Wal-Mart's ADA Coordinator at least quarterly;

c.     to report to the parties and the Court;

d.     to determine who is a potential Eligible Claimant, as may be necessary; and,

e.     to determine who is a Qualified Applicant, as may be necessary.

48.     The Special Master shall, to the maximum extent practicable and consistent with the Special Master's obligations, work collegially, non-disruptively, and cooperatively with Wal-Mart as not to unduly interfere with Wal-Mart's operations. Wal-Mart agrees to cooperate with the Special Master, to the maximum extent practicable.

49.     The Special Master shall, upon reasonable notice to the ADA Coordinator, have reasonable access to relevant documents, premises, employees, and other sources of information necessary to exercise his or her duties under this Consent Decree.

50.     The Special Master may make recommendations to Wal-Mart concerning the implementation of this Consent Decree. The Special Master and Wal-Mart may together consider and modify such recommendations. The Special Master shall submit a copy of his/her recommendations and any subsequent modifications to the ADA Coordinator and the EEOC within fourteen (14) days of his/her recommendations.

51.     Within thirty (30) days of receipt of the annual report from the ADA Coordinator, and annually thereafter, the Special Master shall provide a written report to the parties with respect to Wal-Mart's progress in implementing this Consent Decree.

52.     Each report shall:

a.     describe the activities of the Special Master during the period;

b.     provide an assessment of Wal-Mart's success in implementing the terms of the Consent Decree;

c.     describe any changes in Wal-Mart's policies or practices made by Wal-Mart in order to implement or meet the objectives of the Consent Decree;

16

   d. discuss any recommendations of the Special Master to Wal-Mart and Wal-Mart's response; and,

   e. include such other information as the Special Master deems appropriate.

53. The Special Master and the EEOC shall have reasonable access to review all non-privileged records maintained by the ADA Coordinator relating to the implementation or administration of this Consent Decree.

## VII.  ADA COORDINATOR

54. Within fourteen (14) days of the entry of this Consent Decree, Wal-Mart agrees to hire an ADA Coordinator, who has expertise in the ADA and personnel matters, to oversee Wal-Mart's compliance with and implementation of this Consent Decree.  Wal-Mart's ADA Coordinator will be responsible for:

   a. coordinating Wal-Mart's compliance with the ADA;

   b. ensuring Wal-Mart's compliance with this Consent Decree;

   c. making any decision about undue hardship in the provision of reasonable accommodations;

   d. maintaining records for all employees' requests for accommodation under the ADA;

   e. reporting to the Special Master and the EEOC on an annual basis on Wal-Mart's efforts to accommodate individuals with disabilities;

   f. acting as the liaison between Wal-Mart and the Special Master;

   g. assisting in developing Wal-Mart's ADA Policy;

   h. assisting in developing and implementing Wal-Mart's ADA Training Program;

   i. resolving all employee appeals from a denial of a request for a reasonable accommodation; and,

17

       j.    developing an ADA checklist for the use by the auditors as outlined in paragraph 77-79 below.

55.    The ADA Coordinator will report to the Special Master on an annual basis. The ADA Coordinator's report shall include:

       a.    a report on Wal-Mart's efforts to provide reasonable accommodations for qualified individuals with disabilities, including the number of requests received and the number of requests granted or denied;

       b.    a report on ADA training conducted;

       c.    a copy of any notice published in the Associate Handbook and any Wal-Mart Today articles relating to reasonable accommodation or ADA issues; and,

       d.    any other information the ADA Coordinator and the Special Master agree should be included.

## VIII.  ABOLITION OF THE MATRIX

56.    Within six (6) months of the date of entry of this Consent Decree, Wal-Mart agrees to discontinue all use of the Matrix of Essential Job Functions ("Matrix") and shall not utilize the Matrix or any substantially similar document in making any employment decision for the duration of this Consent Decree.

57.    Within six (6) months of the date of entry of this Consent Decree, Wal-Mart agrees to take all reasonable steps to destroy all copies of blank Matrix forms at their stores and distribution centers.

58.    Within six (6) months of the date of entry of this Consent Decree, Wal-Mart agrees to effectively disseminate the information about abolition of the Matrix to all of its supervisors, managers, and hiring committee members, concurrent with the abolition of the Matrix.

18

59.     Within six (6) months of the date of entry of this Consent Decree, Wal-Mart agrees to develop job descriptions for all jobs in its stores and distribution centers which are job related and consistent with actual job requirements.

60.     Wal-Mart agrees to, within fourteen (14) days of the entry of this Consent Consent Decree, provide written notification to each managing official of each store and distribution center, nationwide, of this Consent Decree and that:  (1) the Consent Decree requires the discontinuance of the Matrix within six (6) months; (2) the Matrix will be discontinued within six (6) months and no longer utilized in any fashion for any purpose after that date; and, (3) effective immediately, the Matrix should only be used after a conditional offer of employment is made.

## IX.  ADA POLICIES AND PROCEDURES

61.     Within six (6) months of the date of entry of this Consent Decree, Wal-Mart agrees to replace its existing policies on the ADA with a consolidated policy which complies with the ADA and which will be reviewed and critiqued in writing by the Special Master.  The ADA Policy will:

        a.     include internal ADA complaint procedures;

        b.     adopt a new policy and procedures for providing reasonable accommodation for individuals with disabilities, which complies with the ADA;

        c.     require Wal-Mart's managers to engage in the interactive process required by the ADA for qualified individuals with disabilities to determine an appropriate accommodation at the time a potential employee applies for a position with Wal-Mart, after Wal-Mart hires an employee, and during an employee's employment with Wal-Mart;

        d.     include the appeals procedures to the ADA Coordinator from any denials of requests for reasonable accommodations; and,

        e.     explain that any decision about undue hardship in the provision of a reasonable accommodation shall be made by the ADA Coordinator.

19

62. Wal-Mart shall effectively disseminate its new reasonable accommodation procedures and ADA policy by:

    a. posting an outline of the reasonable accommodations procedures and ADA policy in a conspicuous place at each worksite, where the other EEO and labor notices are posted;

    b. effectively notifying all current employees of the new policies and procedures;

    c. providing written and/or oral notification to all applicants that Wal-Mart follows a reasonable accommodation procedure, and that reasonable accommodations are available and the method for obtaining a reasonable accommodation;

    d. explaining, in the next-published Wal-Mart Associate Handbook, that Wal-Mart has established procedures for requesting a reasonable accommodation detailed in a separate written policy that can be accessed on Pipeline (Wal-Mart's Intranet site for communicating with its employees) or by telephone request to the ADA Coordinator;

    e. making a copy of the ADA policy and reasonable accommodation procedures available on Wal-Mart's Pipeline;

    f. including a notice of the new ADA policy and procedures on the Manager's Workbench email with a reference to the Pipeline;

    g. notifying all new employees of its new ADA policy upon the employee's hire; and,

    h. rescinding Wal-Mart's ADA Manual and the video <u>Recruit the Best</u> with its attendant workbook.

## X. STAFF TRAINING AND DEVELOPMENT

63. Within twelve (12) months of the entry of this Consent Decree, and on an annual basis for the duration of this Consent Decree, Wal-Mart agrees to provide ADA training for its management employees in stores and distribution centers, its personnel

1   managers, and any individual involved in the hiring process at a store or distribution
2   center. The annual ADA training shall include some interactive component.

3   64.   Wal-Mart agrees to invite a Commission representative and the Special
4   Master to attend all ADA annual training sessions with reasonable notice.

5   65.   Wal-Mart agrees to include the following topics in all annual ADA training
6   sessions:

7   a.   an overview of the ADA, Wal-Mart's obligations under the ADA, and
8        applicant and employee rights under the ADA;

9   b.   non-discrimination in hiring and recruitment;

10  c.   reasonable accommodation in the application and hiring process;

11  d.   procedures for addressing reasonable accommodation requests in the
12       application and hiring process;

13  e.   examples of accommodations in the application and hiring process for
14       people with disabilities, including people who are deaf or hearing
15       impaired;

16  f.   awareness of issues affecting employees and applicants who have
17       disabilities;

18  g.   that any decision about undue hardship in the provision of a
19       reasonable accommodation shall be made by the ADA Coordinator;

20  h.   Wal-Mart's commitment to meeting the requirements of the ADA;
21       and,

22  i.   Wal-Mart's commitment to engage in the interactive process required
23       by the ADA for qualified individuals with disabilities to determine an
24       appropriate accommodation at the time a potential employee applies
25       for a position with Wal-Mart, after Wal-Mart hires an employee, and
26       during an employee's employment with Wal-Mart.

27  66.   Wal-Mart agrees to provide in-depth ADA training to its Regional Personnel
28  Managers on an annual basis. Such training shall discuss the interplay between the ADA,

21

Worker's Compensation, and the Family and Medical Leave Act. The ADA Coordinator or the Regional Personnel Managers shall then provide ADA training in the regions.

67. Wal-Mart agrees to develop a Computer-Based Learning Module addressing the ADA, including the Reasonable Accommodation Process, within twelve (12) months of the entry of this Consent Decree.

68. Wal-Mart agrees that, within twelve (12) months of the entry of this Consent Decree, any employee who participates in the hiring process must first review a CBL training module and pass a test on the Reasonable Accommodation Process before he/she is allowed to participate in the hiring process. Certification of such training will be retained at the employee's facility.

69. Wal-Mart agrees to include training for all employees on the ADA in new hire orientation and other appropriate forums.

70. Wal-Mart may use some of its recent training tapes made in Arizona in September, 2001, as part of the resolution of the contempt action in <u>EEOC v. Wal-Mart Stores, Inc.</u>, CIV 98-0276 TUC WDB (Ariz.), so long as the portions on the Matrix are deleted.

71. All personnel who attend the annual ADA training shall sign an attendance roster. The registry of attendance shall be retained by Wal-Mart for the duration of this Consent Decree and reported to the Special Master with Wal-Mart's annual reports.

72. During the term of this Consent Decree, Wal-Mart shall submit all proposed changes to its ADA Policy to the EEOC and the Special Master thirty (30) days prior to the proposed implementation date of the proposed change. Wal-Mart agrees that it shall discuss any objections the Commission or the Special Master may have with any proposed change and attempt to resolve the objection prior to implementing the proposed change.

73. A Wal-Mart Executive Officer, or designee, shall make a videotape which shall be shown to each Wal-Mart employee on an annual basis:

        a.    outlining Wal-Mart's commitment to complying with the ADA; and,

        b.    the value that individuals with disabilities bring to Wal-Mart.

22

## XI.  RECORD KEEPING

74.     Wal-Mart shall retain all personnel records in accordance with 29 C.F.R. §1602.14.

## XII.  POSTING OF NOTICE

75.     Within ninety (90) days of the entry of this Consent Decree, Wal-Mart will post the Notice attached as Exhibit G ("Notice II") in all stores and distribution centers located in the United States of America.  Notice II will be posted in the same approximate locations as the other labor and employment postings for the duration of this Consent Decree.  Notice II shall be the same type, size, and style as Exhibit G.

76.     Within ninety (90) days of the entry of this Consent Decree, Wal-Mart will post a notice in a conspicuous location at every store and distribution center in the United States of America stating:  "Please advise us if you need assistance in the application or hiring process to accommodate a disability.  If you request, Wal-Mart will provide you a copy of its procedures for requesting a reasonable accommodation during the hiring process."

## XIII.  AUDITS

77.     Whenever a Wal-Mart unit or facility, including a store or distribution center, undergoes an annual audit, or any special audit, involving any personnel procedures, the auditors will utilize a checklist developed by the ADA Coordinator.

78.     Any audit that determines any unit or facility has been out of compliance with Wal-Mart's obligations under this Consent Decree, including reasonable accommodation procedures, will be referred to the ADA Coordinator.  The ADA Coordinator will review any recommendations proposed by the auditors, including whether the managers at the unit or facility require additional training.  The ADA Coordinator shall make additional or different recommendations, if s/he deems it appropriate.

79.     The ADA Coordinator will compile a report of the audits referred to him or

23

1 her, including any recommendations for improvement, and will provide such reports to the
2 EEOC and the Special Master as part of the annual compliance report.  The Commission
3 and Special Master may review the audit reports for the purpose of determining if there
4 has been non-compliance with this Consent Decree and, where such non-compliance is
5 determined, the Commission may take enforcement action consistent with this Consent
6 Decree and the ADA.

### XIV.  PERFORMANCE EVALUATIONS

8    80.    Within six (6) months of the date of entry of this Consent Decree, Wal-Mart
9 shall institute a procedure which evaluates managers and applicable human resources
10 personnel on their compliance with the ADA and Wal-Mart's new ADA policy.  Such
11 compliance will be measured by appropriate testing and other appropriate criteria which
12 shall be developed by the ADA Coordinator.  Understanding of and compliance with Wal-
13 Mart's ADA procedures shall be a line item on the manager's standard performance
14 evaluation.

15    81.    Wal-Mart agrees that the failure of any such Wal-Mart employee to
16 implement or enforce Wal-Mart's ADA policy should be reported and should result in
17 appropriate action against the employee.

### XV.  COMPLIANCE

19    82.    Wal-Mart agrees to provide annual compliance reports within thirty (30)
20 days of the first anniversary of the entry date of this Consent Decree, and annually
21 thereafter, to the EEOC and the Special Master.  Wal-Mart agrees to provide a report of
22 compliance including:

23       a.    a report of all activities of the ADA Coordinator, including any
24             reports of approvals and denials of requests for reasonable
25             accommodation;

26       b.    descriptions of all annual ADA training provided to any employee;

28       c.    copies of all notices, Associate Handbooks, and Wal-Mart Today

24

articles relating to ADA issues; and,

       d.     reports of audits of facilities, with respect to compliance with Wal-Mart's ADA procedures.

83.    In the event that the Commission believes that Wal-Mart has failed to comply with any provisions(s) of this Consent Decree, it shall:

       a.     notify Wal-Mart in writing of the alleged non-compliance by fax and by overnight mail to both the ADA Coordinator, the counsel, and the corporate officer who sign this Consent Decree on behalf of Wal-Mart, using the fax numbers and addresses shown in connection with their signatures below, and,

       b.     afford Wal-Mart forty-five (45) business days after service of such notice to remedy the non-compliance.

84.    If Wal-Mart has not remedied the alleged non-compliance within forty-five (45) business days, the EEOC may petition the Court to enforce the terms of this Consent Decree at any time during which this Court maintains jurisdiction over this action.

85.    In the event the Court finds that Wal-Mart has violated this Consent Decree, the Court may order appropriate relief to remedy the non-compliance, including attorneys' fees, daily fines, and appropriate injunctive relief.

86.    The parties shall bear their respective attorneys' fees and costs incurred in this action up to the date of entry of this Consent Decree.

## XVI.  DURATION OF CONSENT DECREE

87.    This Court shall retain jurisdiction of this action for a period of four (4) years after entry of this Consent Decree.  This Consent Decree shall expire by its own terms at the end of four (4) years without further action by the parties.

25

**ENTERED** this _17th_ day of _December_ 2001.

HONORABLE GARLAND E. BURRELL JR.
UNITED STATES DISTRICT JUDGE

APPROVED AND CONSENTED TO THIS _12th_ DAY OF DECEMBER, 2001:

NICHOLAS M. INZEO
Acting Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

EQUAL EMPLOYMENT OPPORTUNITY
 COMMISSION
1801 L Street , N.W.
Washington, D.C.  20507

WILLIAM R. TAMAYO
Regional Attorney

JONATHAN T. PECK
Supervisory Trial Attorney

LYNN L. PALMA
Senior Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
 COMMISSION
San Francisco District Office
901 Market Street, Suite 500
San Francisco, California  94103

26

1  C. EMANUEL SMITH
   Acting Regional Attorney

2

3

4  MARY JO O'NEILL
   Supervisory Trial Attorney

5  EQUAL EMPLOYMENT OPPORTUNITY
     COMMISSION

6    Phoenix District Office
     3300 N. Central Ave., Suite 690

7    Phoenix, Arizona 85012
     (602) 640-5044 (telephone)

8    (602) 640-5009 (facsimile)

9  Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBERT K. RHOADS
Senior Vice President
General Counsel and Secretary
Wal-Mart Stores, Inc.
702 S.W. 8th Street
Bentonville, Arkansas 72716
(501) 273-4505 (telephone
(501) 277-5991  (facsimile)


GREGORY S. MUZINGO
Senior Corporate Litigation Counsel
General Counsel and Secretary
Wal-Mart Stores, Inc.
702 S.W. 8th Street
Bentonville, Arkansas 72716
(501) 273-4505 (telephone
(501) 277-5991  (facsimile)

# EXHIBIT A

## LIST OF OTHER PENDING EEOC ADA CASES

1.   EEOC and Ruthie Gilmore v. Wal-Mart Stores, Inc., d/b/a Wal-Mart Distribution Center, No. C2-01-0094 (S.D. Ohio).

2.   EEOC and Mary Baker v. Wal-Mart Stores, Inc., No. 01-5030 (W. D. Ark).

3.   EEOC and Majorie Arbuckle v. Wal-Mart Stores, Inc., No. 01-075-A (E.D. Va.).

4.   EEOC v. Wal-Mart Stores, Inc., No. 5:01-CV-90-BO(3) (E.D.N.C.).

5.   EEOC v. Wal-Mart Stores, Inc., No. 98 C 7023 (N.D. Ill.).

6.   EEOC and Michael Landers v. Wal-Mart Stores, Inc., No. 99-CIV-0453(Sc) (W.D. N.Y.).

7.   EEOC v. Wal-Mart Stores, Inc., CIV 01-0381 ELM/RLP (D. N.M.).

8.   EEOC v. Wal-Mart Stores, Inc., No. CV 01-1104 PHX PGR (D. Az).

9.   EEOC v. Wal-Mart Stores, Inc., CV C-01-0255 CW (N.D. Cal.).

10.  EEOC v. Wal-Mart Stores, Inc. d/b/a Sam's Wholesale Club, No. 4:01CV01421DJS (E.D. Mo.).

11.  EEOC and James Bernard v. Wal-Mart Stores, Inc., No. 01-0869-DW ( W. D. Mo).

12.  EEOC v. Wal-Mart Stores, Inc., d./b/a Wal-Mart Distribution Center #6012; Wal-Mart Stores, Inc., CV EP-01-CA-0188- EP (W. D. Tex., El Paso Division).

**EXHIBIT B**

## LIST OF DISTRIBUTION CENTERS

SEARCY, AR 72143-9719
PALESTINE, TX 75801
CULLMAN, AL 35055
FT. SMITH, AR 72903
BENTONVILLE, AR 72712
MT. PLEASANT, IA 52641
DOUGLAS, GA 31533
BROOKHAVEN, MS 39601
PLAINVIEW, TX 79072
LAURENS, SC 29360
LAURENS, SC 29360
NEW BRAUNFELS, TX 78130
SEYMOUR, IN 47274
SEARCY, AR 72143
LOVELAND, CO 80538
BROOKSVILLE, FL 34602
PORTERVILLE, CA 93257
GREENCASTLE, IN 46135
SUTHERLAND, VA 23885
GROVE CITY, OH 43123
MENOMONIE, WI 54751
RED BLUFF, CA 96080
WOODLAND, PA 16881-9300
HURRICANE, UT 84737
RAYMOND, NH 03077
BUCKEYE, AZ 85326
STATESBORO, GA 30458
OTTOWA, KS 66067
PALESTINE, TX 75801-1221
HERMISTON, OR 97838
MARCY, NY 13403
MIDWAY, TN 37809
HOPE MILLS, NC 28348
SHARON SPRINGS, NY 13459
BEDFORD, PA 15522
OLNEY, IL 62450
STATESBORO, GA 30458
WINTER HAVEN, FL 33881
NEW ALBANY, MS 38652
PAGELAND, SC 29728
CLARKSVILLE, AR 72830
TEMPLE, TX 76504
BENTONVILLE, AR 72716
LONDON, KY 40741
LOVELAND, CO 80538
BLOOMINGTON, MN 55438-2606
DAYTON, TX 77535
BENTONVILLE, AR 72716
GREENFIELD, IN 46140
SEARCY AR 72143
DESOTO, TX 75115
BENTONVILLE, AT 72716
MACON, GA 31206

# EXHIBIT C

## APPLICANT'S CLAIM FORM

**Instructions:**     **Please answer *every* numbered question to establish your claim. When asked to "explain" your answer, please provide as much information as possible. Please feel free to write on the back of this form or to add additional pages as needed.**

**If you are unsure of any information, particularly dates, please approximate and write "approx."**

**If you do not know the answer to some question, please answer with "I don't know".**

**Please complete and enclose a Wal-Mart Job Application. Even if you are no longer interested in working at Wal-Mart, the completed job application will be reviewed to determine whether you were qualified under Wal-Mart's non-discriminatory hiring standards.**

1.    Name:

2.    Address:

3.    Phone Number:

4.    Social Security Number:

5.    Did you complete and submit an application to work at a Wal-Mart Distribution Center at any time from 1994 through 1998?

_____ Yes _____ No

**Complete the remaining portion of this form only if you answered "Yes" to Question # 5**

6.    At what Wal-Mart facility did you apply?

7.    When did you apply?

8.    What job or jobs did you apply for?

9.      Were you offered a job by Wal-Mart?

10.     If you were not offered a job at Wal-Mart, do you have any information or ideas about the reason you were not offered a job?  Please explain.

11.     If you were interviewed, was your medical, physical, or mental condition discussed in any way? (for example: any discussion about physical limitations that would affect your ability to do the job; or, any history of medical conditions, including worker's compensation claims).  Please explain.

12.     Do you think you were not offered a job by Wal-Mart based on information requested by Wal-Mart about your medical, physical, or mental condition during the application process?  Please explain why you believe this?

13.     What was your home address at the time you applied for a job at a Wal-Mart Distribution Center?

14.     What was the next job you had after applying at a Wal-Mart Distribution Center?  What city was it in?  When did you start?  What was your pay?

15.     **Are you interested in being offered a job at a Wal-Mart Distribution Center?**
        If you check no, it will not affect your eligibility for money or the amount of money to which you may be entitled.  If you check yes, you will receive a letter informing you about the process for job interviews and placement on a priority hiring list.

        _____        No, I am not interested in a job offer.

Claim Form
Civ. No. S-99-414 GEB/DAD U.S.Dist Ct. (E.D.Ca)                                              page 2

_____    Yes, I am interested in a job offer and want to receive more information about the process.
What Distribution Center are you interested in being given priority consideration for a job?_____

I declare under penalty of perjury that the foregoing is true and correct.

Signature: _____     _____
Claimant                                                                          Date

You should receive a notice informing you whether you are initially determined to be either:

(1) ineligible and the process for objecting to this decision; or,

(2) potentially eligible to receive money, which will be determined later; or,

(3) potentially eligible to receive money **and** because you indicated on this form that you are interested in a job at a distribution center, that your claim form, including job application will be forwarded to Wal-Mart for further processing.

**NOTE:** **In order for you to receive any benefit from the settlement of this lawsuit, you may be required to provide additional information.**

**BEFORE YOU MAIL YOUR CLAIM, PLEASE CHECK TO MAKE SURE YOU:**

**Answered EVERY numbered question.**

**Signed your claim application.**

**Wrote today's date next to your signature.**

**Completed and enclosed a Wal-Mart job application.**

# EXHIBIT D



MP-24Z REV. 11/96

# Our People
## Make the Difference
*Always* SM

EOE/MF

This application for employment will not be considered unless fully completed

| Last Name | First Name | Middle Name | Social Security Number |
|---|---|---|---|

Street Address

( )    ( )

City, State, and Zip Code

Telephone Number    Alternate Telephone

Yes ☐  No ☐  IF YES:

Have you ever been employed by Wal-Mart or any of its subsidiaries?

Location    Dates of employment

Reason for leaving    Name Employed Under If Now Different

List all positions for which you would like to be considered    Rate of pay expected    Date you can start work

List relatives employed by Wal-Mart, how related and where they work. (If you live in California, do not answer this question.)

Are you 18 years of age or older?

Yes ☐  No ☐

If under 18, applicant may be required to submit a birth certificate or a work certificate as required by the state or federal laws.

Type of employment you are seeking. Peak time ☐  Full time ☐
NOTE: Peak time is less than 28 hrs/wk.

Can you, after employment, submit verification of your legal right to work in the United States?
Temporary ☐
Yes ☐  No ☐

Check the highest level or equivalent completed:

Elementary School
☐ or less
8

High School
☐ ☐ ☐ ☐
9  10  11  12

College / Tech
☐ ☐ ☐ ☐
1  2  3  4

Are you currently a student?
Yes ☐  No ☐

Name of college, university or vo-tech attended: _____

First Name    Last Name    Please Print:

## YOU CAN TOO!

**WAL-MART**      **WAL-MART** SUPERCENTER

**EMPLOYMENT HISTORY** - List entire employment history, starting with your present employer.  For any unemployed  or self-employed periods show dates and location. (Attach additional sheets if necessary.)

| Company Name: _____ | Your Job: _____ | Last Pay Rate: _____ |
|---|---|---|
| Address: _____ | Supervisor's name: _____ | Reason for Leaving _____ |
| City / State / Zip: _____ | Dates Employed  From: _____ | _____ |
| Phone #: _____ | To: _____ | _____ |

| Company Name: _____ | Your Job: _____ | Last Pay Rate: _____ |
|---|---|---|
| Address: _____ | Supervisor's name: _____ | Reason for Leaving _____ |
| City / State / Zip: _____ | Dates Employed  From: _____ | _____ |
| Phone #: _____ | To: _____ | _____ |

| Company Name: _____ | Your Job: _____ | Last Pay Rate: _____ |
|---|---|---|
| Address: _____ | Supervisor's name: _____ | Reason for Leaving _____ |
| City / State / Zip: _____ | Dates Employed  From: _____ | _____ |
| Phone #: _____ | To: _____ | _____ |

- If currently employed, may we contact your employer?   Yes ☐   No ☐

AVAILABILITY - To help  us consider you for a job that  matches your  availability, please tell us the earliest time and the  latest time you can work each day.

| Day | Earliest Time | Latest Time |
|---|---|---|
| Sunday | | |
| Monday | | |
| Tuesday | | |
| Wednesday | | |
| Thursday | | |
| Friday | | |
| Saturday | | |

Check if you are available to work:

Days ☐   Evenings ☐   Nights ☐   Saturday ☐   Sunday ☐

**In Washington,** list only convictions which occurred within the last 7 years and convictions for which you were released from prison within the last 7 years.
**In Hawaii,** do not answer the following questions.

- Have you ever been  convicted of a felony?
  Yes ☐   No ☐

- Have you ever been convicted of any type of theft or fraud or a violent crime?   Yes ☐   No ☐

If yes, on a separate sheet, identify the crime for which you were convicted, the date of the conviction and the location of the court in which you were convicted. Please provide any details you feel are relevant. Conviction of a crime will not automatically disqualify you from consideration for employment, but will be considered as part of an overall evaluation of your qualifications.

List two (2) people (no relatives) you have worked with and whom we may contact for a  reference if necessary

| Name: | | |
|---|---|---|
| Occupation: | | |
| Phone # | Street: | |
| | City: | State: |
| Name: | | |
| Occupation: | | |
| Phone # | Street: | |
| | City: | State: |

### IMPORTANT- We are glad you are interested in joining the Wal-Mart family. Please read  the following statements carefully before you sign and return this application.

The company, in considering my application for employment, may verify the information set forth on this application and obtain additional background information relating to my background.  I authorize all persons, schools, companies, corporations, credit bureaus and law enforcement agencies to supply any information concerning my background.  *I have read, understand, and agree to this statement, (please initial here.)*  _____

I understand that Wal-Mart Stores, Inc. has a  commitment to maintain an alcohol / drug-free workplace and that Wal-Mart, unless prohibited by state law, requires a drug screening test as a part of its selection and hiring process.  I understand that such drug screening will consist of the testing of a urine sample  or other medically recognized test designed to detect  traceable amounts of a controlled substance in my body. If any detectable amounts are found in my  body, a second test, approved by the NIDA will be performed on the same  specimen.  If the results of the second test are also positive, I will be disqualified  from consideration for employment and any offer of employment withdrawn.  I  further understand and agree that if I am employed, I may be  required to submit to alcohol/drug testing under certain circumstances during my employment.  *I have read, understand, and agree to the statement above, (please initial here.)*  _____

I certify that  the information on this application is correct and I understand that any misrepresentation or omission of any information will result in my disqualification from consideration for employment or, if employed, my dismissal.  I understand that this application is not a contract, offer, or promise of employment and that if hired I will be able to resign at any time for any reason. If hired, the company can terminate my employment at any time with or without cause.  I further understand that no one other than the President of Wal-Mart Stores, Inc., or Vice President of its People Division has the authority to enter into an employment contract or agreement with me, and that my at-will employment can be changed only by a written agreement signed by the President of Wal-Mart Stores, Inc.  *I  have read, understand, and agree to this statement, (please initial here.)*  _____

I understand that this application is good only for sixty (60) days from today's date.  If I still desire a position with the company after this application expires, it will be my  responsibility to fill out a  new application and file it with the company.  Otherwise, the company will not consider me for employment after this application expires.

_____   _____
Date of Application          Signature as shown on Social Security Card

# EXHIBIT E

# IF YOU APPLIED FOR A JOB AT A
# WAL-MART DISTRIBUTION CENTER
# BETWEEN 1994 - 1998 YOU MAY BE
# ENTITLED TO MONEY AND/OR A JOB OFFER

## NOTICE OF SETTLEMENT FOR APPLICANTS AT
## WAL-MART DISTRIBUTION CENTERS
## DURING CALENDAR YEARS 1994 through 1998

Wal-Mart Stores, Inc. has reached an Agreement with the Equal Employment Opportunity Commission (EEOC), the federal agency responsible for enforcing federal employment discrimination statutes.

It is illegal under the Americans with Disabilities Act (ADA) for an employer to ask disability related questions before making a job offer.

Wal-Mart, in the past, sought disability related information from job applicants before Wal-Mart made a conditional offer of employment.

All persons who believe they were rejected for employment because Wal-Mart requested information about their medical condition or disability  may be entitled to money damages and/or  a job offer.

If you believe you did not receive a job offer from a Wal-Mart Distribution Center for this reason, you may request a Claim Form and obtain further information at:

**1-866-513-8206**
**or**
**www.eeocwalmart.com**

## CLAIMS MUST BE FILED
# NO LATER THAN MARCH 1, 2002.

**EXHIBIT F**

**TOP FIFTY MAJOR METROPOLITAN NEWSPAPERS**

| STATE | NEWSPAPER | CIRCULATION |
|---|---|---|
| CA | Los Angeles Times | 1,384,688 |
| NY | New York Times National Edition | 1,671,245 |
| IL | Chicago Tribune | 1,700,236 |
| PA | Philadelphia Inquirer | 811,909 |
| DC | Washington Post | 1,085,060 |
| MI | Detroit Free Press | 764,591 |
| TX | Houston Chronicle | 736,212 |
| GA | Atlanta Journal-Constitution | 679,198 |
| MA | Boston Globe | 710,256 |
| TX | Dallas Morning News | 781,959 |
| CA | Riverside Press-Enterprise | 175,910 |
| AZ | Arizona Republic | 584,000 |
| CA | San Diego Union Tribune | 451,291 |
| MN | Minneapolis Star Tribune | 674,346 |
| CA | Orange County Register | 415,000 |
| NY | Ny Nassau-Suffolk Newsday (NY) | 622,109 |
| MO | St Louis Post Dispatch | 500,397 |
| MD | Baltimore Sun | 471,389 |
| WA | Seattle Times | 175,795 |
| FL | St Petersburg/Tampa Times | 431,320 |
| PA | Pittsburgh Post Gazette | 417,815 |
| OH | Cleveland Plain Dealer | 484,034 |
| FL | Miami Herald | 448,807 |
| CO | Denver Post | 568,560 |
| NJ | Newark Star Ledger | 605,433 |
| CA | San Francisco Chronicle | 557,000 |
| MO | Kansas City Star | 400,000 |
| OH | Cincinnati Enquirer | 319,516 |
| TX | Ft. Worth Star Telegram | 334,773 |
| FL | Orlando Sentinel | 251,051 |
| CA | Sacramento Bee | 357,408 |
| TX | San Antonio Express News | 371,506 |
| NV | Las Vegas Review Journal and Sun | 224,182 |
| FL | Ft Lauderdale Sun Sentinel | 372,000 |
| IN | Indianapolis Star | 362,193 |
| VA | Norfolk Virginian - Pilot | 234,575 |

| WI | Milwaukee Journal Sentinel | 461,000 |
| OH | Columbus Dispatch | 381,412 |
| NC | Charlotte Observer | 298,039 |
| NJ | Bergen-Passaic Record | 237,916 |
| LA | New Orleans Times Picayune | 309,274 |
| UT | Salt Lake City Tribune | 162,880 |
| OR | Portland Oregonian | 429,580 |
| NC | Greensboro News & Record | 114,207 |
| TN | Nashville Tennessean and Leaf Chronicle | 280,104 |
| NY | Buffalo News | 326,267 |
| CT | Hartford Courant | 296,505 |
| NC | Raleigh News & Observer | 207,437 |
| TN | Memphis Commercial Appeal | 244,152 |
| FL | Jacksonville Florida Times Union | 237,603 |
| | | 25,122,140 |

# EXHIBIT G

## NOTICE OF NON-DISCRIMINATION

This Notice is being posted pursuant to a Consent Decree voluntarily entered into by Wal-Mart Stores, Inc. ("Wal-Mart") and the Equal Employment Opportunity Commission ("EEOC") in connection to the settlement in the case entitled <u>EEOC v. Wal-Mart Stores, Inc.</u>, No. S99-0414 GEB DAD ( E. D. Cal.).

The EEOC lawsuit alleged that Wal-Mart violated the Americans With Disabilities Act ("ADA") by making illegal disability related medical inquiries before job offers were made from 1994-1998.

Under the terms of the Consent Decree, Wal-Mart will:

1.  Not engage in any employment practice which violates the ADA;
2.  Not retaliate against any person who exercises his or her rights under the ADA;
3.  Make monetary payments to individuals were harmed by Wal-Mart;
4.  Provide nationwide training to all managers and supervisors and people involved hiring committees concerning the requirements of the ADA;
5.  Hire an ADA Coordinator;
6.  Revise ADA Policies and Procedures;
7.  Appoint a Special Master;
8.  Abolish the use of the Matrix;
9.  Post this Notice;
10. Perform ADA Audits;
11. Include ADA compliance in supervisors' and managers' performance evaluations; and
12. Maintain and provide employee record information to the EEOC.

Federal law prohibits covered employers from discriminating against any employee or applicant for employment on the basis of disability, sex, race, color, national origin, or age, and from retaliation.  Should you have any complaints of discrimination or retaliation, you can contact the EEOC.  EEOC charges no fee for their services and has employees who speak languages other than English.

Dated:_____

## THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE

This Notice must remain posted for four (4) years from the date shown above and must not be altered, defaced, or covered by any other material.  Any questions concerning this Notice or compliance with its provisions may be directed to the U.S. Equal Employment Opportunity Commission, 1-800-669-4000 or  TTY 1-800-669-6820.

United States District Court
for the
Eastern District of California
December 18, 2001


* * CERTIFICATE OF SERVICE * *


2:99-cv-00414


Equal Employment

    v.

Wal-Mart Stores Inc

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  December 18, 2001, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


  Lynn Palma          SF/GEB
  Equal Employment Opportunity Commission
  San Francisco District Office
  901 Market Street
  Suite 500
  San Francisco, CA  94103

  John C Fox
  Fenwick and West
  Two Palo Alto Square
  Suite 800
  Palo Alto, CA  94306

  Kelly Borelli
  Murphy Austin Adams Schoenfeld LLP
  PO Box 1319
  1000 G Street
  Third Floor
  Sacramento, CA  95812-1319

  Gregory S Muzingo      Jack L. Wagner, Clerk
  PRO HAC VICE
  Wal-Mart Stores Inc
  702 Southwest Eighth Street
  Bentonville, AR  72716-8313   by: Deputy Clerk